**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| EUGENE WRIGHT, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | )    Case No. 19 C 826 |
| | ) |
| DEANNA BROOKHART, Warden, | ) |
| | ) |
| Respondent. | ) |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Following a jury trial in the Circuit Court of Cook County, Eugene Wright was convicted of armed robbery with a firearm and sentenced to 50 years in prison. He has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. For the reasons stated below, the Court denies his petition in part, defers its decision in part, and will appoint Wright an attorney to represent him on the remainder of his case.

**Background**

The following information is drawn from the Illinois Appellate Court and Illinois Supreme Court's opinions in Wright's case and the record of the state court proceedings. *See People v. Wright*, 2017 IL 119561, ¶¶ 3–35, 91 N.E.3d 826, 830–35; *People v. Wright*, 2015 IL App (1st) 123496, ¶¶ 3–27, 33 N.E.3d 781, 787–92, *aff'd in part, rev'd in part*, 2017 IL 119561 ¶ 92, 91 N.E.3d at 848.

Wright and his codefendant Michael Morgan were charged with four counts of armed robbery with a firearm in connection with the robbery of a Bakers Square

restaurant on the north side of Chicago in December 2010. As indicated, the trial judge sentenced Wright to a 50-year prison term. The sentence appears to have turned in significant part on the use of a firearm. The governing statute required use of a "firearm," defined under Illinois as excluding, among other things, BB guns. *See* 720 Ill. Comp. Stat. 5/18-1(a), 18-2(a); 720 Ill. Comp. Stat. 5/2-7.5; 420 Ill. Comp. Stat. 65/1.1. Wright appears to have contended that the evidence showed a BB pistol was used. If so, the crime would not have amounted to "armed" robbery under Illinois law, and Wright likely would have faced a significantly lower sentence on what would have amounted to, effectively, a lesser included offense.

In August 2011, at the grand jury proceeding in Wright's case, a Chicago police detective, Allen Lee, testified that he had investigated the robbery. Lee testified that Morgan used a handgun during the robbery, Morgan had time to dispose of the gun before being detained by the police, and no weapon was recovered.

At his arraignment in February 2011, Wright was represented by a public defender. Wright informed the court that he would not agree to continuances. As a result, the public defender told the court that she would have to withdraw as counsel because she was not ready for trial. Wright then told the court he wanted to hire his own attorney, and the case was continued for him to do so.

At a hearing on February 24, 2011, Wright advised the court that he had not retained his own counsel and wished to proceed *pro se*. The court told him that it was possible he faced consecutive sentences for two charges—the charge in this case and another armed robbery involving the robbery of another Bakers Square restaurant—a sentence of "21 [years] and then another additional 21 minimum or it could be the

2

maximum 45 and an additional 45." *Wright*, 2017 IL 119561, ¶ 49, 91 N.E.3d at 838 (quoting transcript). The court also informed Wright that he had the right to an attorney but that there was no basis at the time for the court to appoint an attorney other than a public defender. And the court informed him that he had the right to represent himself but "it would be quite challenging for [him] to do this on [his] own" and that the court "believe[d] [he was] making a very big mistake." *Wright*, 2017 IL 119561, ¶ 49, 91 N.E.3d at 839 (same). Wright indicated he understood and nonetheless wished to represent himself.

Later in the hearing, when Morgan was invoking his right to proceed *pro se*, the court told Morgan that charges against him carried a possible sentence of 21 to 45 years (as with Wright). The court indicated that those sentences could be extended depending on Morgan's criminal history. The prosecution indicated that both Morgan and Wright were eligible for an extended term of imprisonment. The court relayed that information to Morgan but did not state it directly to Wright at that time.

On March 1, 2011, at another hearing, the trial court stated to Wright, "[J]ust so I am clear, I am going to re-admonish you as to your pro se rights."[1] *Id.* ¶ 51, 91 N.E.3d at 839 (quoting transcript). The court told Wright that he was facing 21 to 60 years in prison, at fifty percent good conduct time, and Wright indicated that he understood. In response to questions from the court, Wright stated that he was 37 years old, had spent two years in college, and had previously represented himself on appeal in a criminal case. The court explained that Wright would be held to the same standards as any lawyer and that it believed Wright was "making a very big mistake." *Id.* Wright again

---

[1] Different judges presided over the hearings on February 24, 2011 and March 1, 2011.

indicated that he wished to proceed *pro se*, and the court permitted him to do so.

Wright and Morgan had separate trials.  In July 2012, Wright included Morgan on a list of witnesses he might call at trial.  That month, at a pretrial hearing held the day before Wright's trial was to begin, the Court asked whether Morgan was aware that he might be called as a witness, and the prosecution said he was.  The Court stated, "And I assume that Mr. Morgan has nothing to say."  State court record, Ex. M at EE-31:19–20 (ECF p. 95).  A person in the courtroom, who respondent says was Morgan's attorney, said, "I believe so, Judge.  That's [sic] he has nothing to say." *Id.*  The Court stated, "All right.  You understand that?  He has a right to remain silent," and Wright said he understood. *Id.* at EE-31:23–EE-32:1 (ECF p. 95–96).

Wright's jury trial commenced the next day.  At the trial, the manager of the Bakers Square restaurant testified that Morgan entered the restaurant, showed what "looked like a black automatic, black gun" tucked into his waistband, and demanded to be taken to the restaurant's office to get money from a safe there.  *Wright*, 2017 IL 119561, ¶ 9, 91 N.E.3d at 831 (quoting testimony).  The manager testified that he was sure the gun was an actual firearm and thought it was a semiautomatic pistol, which he had experience firing.  He testified that Wright entered the restaurant after Morgan, and he identified Wright as a person shown on a video entering the office and taking a roll of coins from the safe.

A waitress who was working at the restaurant also testified that Morgan lifted his shirt to reveal a gun in his waistband.  The waitress could see only the handle of the gun.  A waiter testified that he saw the handle of Morgan's gun, too.  He had seen guns before and believed it was a "9 millimeter pistol." *Id.* ¶ 12, 91 N.E.3d at 832 (quoting

testimony).

A Chicago police officer, Paul Cirrincione, testified that he and another officer were surveilling the restaurant when it was robbed, because a nearby Bakers Square had recently been robbed by two men. Cirrincione testified that he saw two men—Morgan and Wright, who fit the description of the suspects in the prior robbery—exit the restaurant. He testified that he asked the men to approach his unmarked police car, but they fled on foot in different directions.

Cirrincione testified he chased Morgan, first in his police car and then on foot. While the chase was ongoing, Cirrincione testified, he received a radio call informing him that the restaurant had been robbed. He testified that Morgan eventually slipped and fell, and Cirrincione and other officers detained him. Morgan did not have a firearm on him, Cirrincione testified. Cirrincione testified that he and other officers searched the surrounding area, which was covered by a large amount of snow, and they did not find a firearm.

Another Chicago police officer, Eric Killion, testified that, soon after Morgan was detained, he pulled over a van that matched the description of the van that had been used in the earlier robbery. Wright was driving the van. Killion testified that he searched Wright and the van for weapons but did not find any. Another officer also testified that he searched the van as well and did not find any weapons.

As indicated, Detective Lee investigated the robbery. Among other things, Lee interviewed Morgan about the robbery. According to a police report in which Lee summarized that interview, Morgan stated that he knew Wright only as "G" and that he and Wright had known each other for ten years. State court record, Ex. G at ECF p.

5

100–01.  In the report, Lee noted that Morgan said that Wright picked him up in Wright's car, told him they were going to rob a restaurant, and handed him a black BB gun to use in the robbery.  The report also says that Morgan was interviewed again by two other people, to whom he also stated that the robbery was Wright's idea and that Wright gave him a metal BB gun.  As indicated above and explained in greater detail later, whether or the gun was a BB gun is significant because it has an impact on whether the jury had a basis on which to convict Wright for armed robbery with a firearm.

Detective Lee testified at the trial.  On cross-examination, Wright asked him about his grand jury testimony that a weapon had never been recovered in connection with the robbery.  Lee testified that no weapon had been recovered on the date of the robbery.  He testified, however, that a gun was subsequently recovered but had not been linked to the robbery.  When Wright asked Lee to describe the gun that was recovered, Lee said he did not recall what it looked like but that a report described it as a BB gun.  Lee also testified that, around a week after the robbery, a citizen found a black Crossman BB gun on the street near where the foot chase of Morgan occurred.

Wright attempted to enter into evidence photographs of the BB gun that had been recovered.  At a sidebar conference regarding the admission of the photographs, the prosecution stated that there was no evidence that a BB gun was used in the robbery.  Wright responded that there was evidence of that; when interviewed after his arrest, Morgan had told Lee that he committed the robbery using a black BB gun. Wright acknowledged that the statement was hearsay and said he needed to elicit testimony from "the actual person."  *Wright*, 2017 IL 119561, ¶ 23, 91 N.E.3d at 834. The court told Morgan that he needed to get that testimony from Morgan, not Lee.

6

After the sidebar, Wright continued with his cross-examination of Lee. He attempted to ask questions about Lee's interview of Morgan, and the prosecution objected. The court sustained the objection and stated that Wright could not question Lee about Morgan's statement.

After the prosecution presented more testimony, the court held a hearing outside of the jury's presence at which the court placed Morgan under oath. Morgan invoked his right not to testify pursuant to the Fifth Amendment.

Wright proceeded with his case-in-chief, but he did not try again to admit Morgan's statement to Lee.

In rebuttal, the prosecution called Lee. Wright cross-examined Lee again, but this time he did not try to elicit testimony from Lee concerning Morgan's statement about the BB gun.

At a conference on the jury instructions, the prosecution asked for an instruction to be given on the lesser offense of robbery, in addition to the offense of armed robbery. The prosecution explained to the trial court that it sought this instruction because Wright introduced testimony about the BB gun. As indicated earlier, a BB gun is not considered a firearm for purposes of the Illinois statute regarding armed robbery with a firearm.

The court gave the jury instructions and verdict forms on both armed robbery and robbery. The jury found Wright guilty of armed robbery.

At sentencing, the prosecution informed the court that Wright was eligible for an extended-term sentence of 75 years due to his prior criminal history. The prosecution asked the judge to impose a 60-year prison sentence. The court sentenced Wright to

50 years in prison.

Wright appealed and was represented by counsel on appeal. He argued, among other things, that the trial court failed to properly admonish him of the possible maximum length of his sentence in violation of Illinois Supreme Court Rule 401(a), which governs admonishments courts must make prior to accepting a defendant's waiver of the right to counsel. He also argued that the trial court violated his rights to a fair trial and to present a defense by excluding Morgan's statement about the BB gun.

The state appellate court agreed that the trial court failed to properly admonish Wright, and it concluded this rendered Wright's waiver of counsel invalid. *Wright*, 2015 IL App (1st) 123496, ¶ 48, 33 N.E.3d at 797–98. For this reason, the state appellate court reversed Wright's conviction and remanded the case to the trial court for a new trial. *Id.* ¶ 60, 33 N.E.3d at 801. The appellate court went on to conclude that the trial court's exclusion of Morgan's statement did not "rise to the level of a constitutional due process violation" and that the trial court did not abuse its discretion under the state's evidentiary rules in excluding the statement. *Id.* ¶¶ 65, 70, 33 N.E.3d at 802.

The state petitioned for leave to appeal to the Illinois Supreme Court, which that court granted. Still represented by counsel, Wright filed a cross appeal. As relevant here, the state argued that the appellate court erred in finding Wright's waiver of counsel invalid under Illinois Supreme Court Rule 401(a). Wright argued that the appellate court's decision on the waiver of counsel issue was not erroneous and that he was entitled to a new trial. Wright also argued on his cross appeal that the trial court erroneously excluded Morgan's statement about the BB gun in violation of the state's evidentiary rules and his right to a fair trial under the U.S. Constitution.

The Illinois Supreme Court reversed the appellate court's decision on the admonishment issue. *See Wright*, 2017 IL 119561, ¶ 57, 91 N.E.3d at 843. In doing so, the court described the guarantee of the right to proceed without counsel under the Sixth Amendment to the United States Constitution and noted that Rule 401(a) "governs the trial court's acceptance of an accused's waiver of counsel in Illinois." *Id.* ¶¶ 39–40, 91 N.E.3d at 836. The state supreme court stated, however, that "strict technical reliance" with that rule "is not always required and "each case . . . must be evaluated on its own particular set of facts." *Id.* ¶¶ 41, 54, 91 N.E.3d at 836, 842. It concluded that Wright's decision to waive counsel was proper because it "was made freely, knowingly, and intelligently," and there was no basis to conclude that the trial court's misstatement of the potential maximum sentence prejudiced him. *Id.* ¶¶ 55–56, 91 N.E.3d at 842.

The Illinois Supreme Court also upheld the appellate court's finding that the trial court did not err in failing to admit Morgan's statement about the BB gun. *See id.* ¶¶ 79–84, 91 N.E.3d at 846–47. The court appeared to assume that that the state's exception for hearsay declarations against penal interest could not apply to Morgan's statement until after Morgan personally invoked his Fifth Amendment right not to testify at the formal, in-court hearing. *See id.* ¶ 83, 91 N.E.3d at 847. The court concluded that because Wright did not again attempt to introduce the statement after Morgan formally invoked his right not to testify, the trial court did not error by not admitting it. *Id.* ¶ 84, 91 N.E.3d at 847.

Haywood then filed a petition for a writ of certiorari before the Supreme Court of the United States, which that Court denied. *Wright v. Illinois,* 138 S. Ct. 2574 (2018).

In February 2019, Wright filed a *pro se* petition for a writ of habeas corpus under

9

28 U.S.C. § 2254 before this Court. His petition asserted a single claim concerning the trial court's admonishment of him before he waived his right to counsel. Because Wright had a pending post-conviction proceeding before the Illinois Appellate Court, this Court dismissed the petition without prejudice for failure to exhaust available state court remedies. Wright moved to alter or amend the judgment, and the Court informed him that reinstatement of the case could prevent him from bringing additional claims in a future federal habeas corpus petition. Wright advised the Court that he understood those potential consequences and nonetheless wished to reinstate his petition. He also sought leave to amend his petition.

On August 8, 2019, the Court granted Wright's petition to alter or amend, and it reinstated his habeas corpus petition. At the same time, the Court directed Respondent to file a response by September 19, 2019 and Wright to file a reply to that response by October 17, 2019.

On August 27, 2019, Wright filed an amended petition that included an additional claim concerning the exclusion of Morgan's statement about the BB gun. A few days before her response brief was due, respondent sought an extension for her filing deadline, and the Court extended the deadline until October 21, 2019 and extended the deadline for Wright's reply accordingly.

When respondent filed her response brief on October 21, 2019, she addressed only Wright's first claim regarding the validity of his waiver of counsel. She did not address at all the claim regarding the exclusion of Morgan's statement about the BB gun. Wright pointed this out in his reply brief. Subsequently, respondent sought leave to file a surreply on the ground that Wright's brief included a new claim not in his original

10

petition. The Court granted leave to file the surreply and stated that to the extent Wright's petition had not included the new claim, it would treat Wright's reply as a motion for leave to amend his petition to include the new purported claim. Dkt. no. 35. Wright filed a surreply as well.

## Discussion

A state prisoner is entitled to a writ of habeas corpus "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). "[A] federal court may grant habeas relief after a state-court adjudication on the merits only when that decision (1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Schmidt v. Foster*, 911 F.3d 469, 476-77 (7th Cir. 2018) (quoting 28 U.S.C. §§ 2254(d)(1), (2)).

Wright asserts a claim concerning the waiver of his right to counsel and a claim concerning the exclusion of Morgan's statement about the BB gun. The Court addresses each claim in turn.

## A.    Waiver of counsel

In his first claim, Wright alleges that the trial court improperly admonished him before he waived his right to counsel, in violation of Illinois Supreme Court Rule 401(a) and the Sixth Amendment, by failing to tell him the correct maximum sentence.[2]

---

[2] Wright also raises this claim under the Fourteenth Amendment. The Sixth and Fourteenth Amendments together "guarantee criminal defendants the effective assistance of counsel." *Reynolds v. Hepp*, 902 F.3d 699, 704 (7th Cir. 2018). Because

### 1. Standard of review

At the threshold, the Court addresses the proper standard of review. To the extent that Wright contends that section 2254(d)'s standard of review does not apply because the Illinois Supreme Court did not expressly say that it was adjudicating Wright's constitutional waiver-of-counsel claim on the merits, the Court disagrees. "[W]hen a defendant presents a federal claim to a state court and the state court denies relief, the federal habeas court should presume that the state court adjudicated the claim on the merits." *Sarfraz v. Smith*, 885 F.3d 1029, 1036 (7th Cir. 2018). To be sure, a petitioner can rebut such a presumption by showing that "there is reason to think some other explanation for the state court's decision is more likely." *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 99–100 (2011)). Wright has not attempted to make that showing. The Court therefore presumes that the Illinois Supreme Court adjudicated Wright's Sixth Amendment claim on the merits. Accordingly, this Court's review is governed by section 2254(d)'s deferential standard, which the Court described earlier in this opinion.

The finding that this presumption applies is bolstered by the fact that the state supreme court expressly noted that Sixth Amendment guarantees a defendant's right to proceed without counsel and explained that, when a defendant decides to do so, Rule 401(a) governs the trial's acceptance of the waiver of counsel. *See Wright*, 2017 IL 119561, ¶¶ 39–41, 91 N.E.3d at 836. Thus the state supreme court expressly recognized that Wright's state-law claim regarding the propriety of his admonishment

---

that is not at issue in Wright's case, the Court focuses on Wright's Sixth Amendment right to proceed without counsel, which the Court discusses in more detail later in this opinion.

had "federal constitutional dimensions." *Sarfraz*, 885 F.3d at 1036. This indicates that the court was "plainly aware of the significant overlap between" Wright's state-law and constitutional claims, which provides support for applying the presumption that the state supreme court adjudicated the claim on the merits. *See id.*

### 2. Merits

"The Sixth Amendment secures to a defendant who faces incarceration the right to counsel at all critical stages of the criminal process." *Iowa v. Tovar*, 541 U.S. 77, 87 (2004) (internal quotation marks omitted). A defendant may, however, "choose to forgo representation." *Id.* In that situation, the Constitution "require[s] that any waiver of the right to counsel be knowing, voluntary, and intelligent." *Id.* at 88.

In addition, Wright has asserted that the Illinois Supreme Court erred in reversing the appellate court on the basis that the trial court substantially complied with Rule 401(a). Under Rule 401(a), a "court shall not permit a waiver of counsel by a person accused of an offense punishable by imprisonment without first, by addressing the defendant personally in open court, informing him of and determining that he understands," among other things, "the minimum and maximum sentence prescribed by law, including, when applicable, the penalty to which the defendant may be subjected because of prior convictions or consecutive sentences." Ill. R. S. Ct. 401(a).

Respondent contends that Wright's Rule 401(a) claim is non-cognizable because it involves a state-law determination of a state-law issue. Respondent is correct that "state law errors usually do not provide a basis for federal habeas relief because a habeas petitioner may obtain relief only if a state court rendered a decision 'in violation of the Constitution or laws or treaties of the United States.'" *Fieldman v. Brannon*, 969

F.3d 792 (7th Cir. 2020) (quoting 28 U.S.C. § 2254(a)). A federal court may consider a state court's rulings on state-law issues only "when those rulings implicate a federal constitutional question." *Id.*

The state supreme court's ruling on Wright's Rule 401(a) implicates the voluntariness of Wright's waiver of his right to counsel. Accordingly, the question for this Court is whether the state supreme court's ruling on the admonishment issue "was contrary to, or involved an unreasonable application of" federal law pertaining to that right. *See* 28 U.S.C. § 2254(a). As indicated, under federal law, "[w]aiver of the right to counsel . . . must be a knowing, intelligent act done with sufficient awareness of the relevant circumstances." *Tovar*, 541 U.S. at 81 (internal quotation marks and alterations omitted). Courts have not, however, articulated a set of necessary conditions that waivers of the right to counsel must satisfy. Rather, a waiver is valid "if the defendant fully understands the nature of the right and how it would likely apply *in general* in the circumstances—even though the defendant may not know the *specific detailed* consequences of invoking it." *Id.* at 92. And "[t]he information a defendant must possess in order to make an intelligent election . . . depend[s] on a range of case-specific factors." *Id.* at 88. Accordingly, in evaluating the validity of a defendant's waiver of the right to counsel, courts in the Seventh Circuit examine the record as a whole and consider "the background and experience of the defendant," "the context of his decision," "whether the district court conducted a formal hearing[,] and what other evidence establishes the defendant understood the dangers and disadvantages of proceeding *pro se*." *United States v. Balsiger*, 910 F.3d 942, 953 (7th Cir. 2018).

In Wright's case, the Illinois Supreme Court considered those factors.

Specifically, the state supreme court considered the context of Wright's decision when it found that he "repeatedly indicated to the trial court" that he wished to proceed *pro se* "due to speedy trial concerns"—a reason the state supreme court found "did not hinge on the maximum sentence allowed for the charged offenses." *Wright*, 2017 IL 119561, ¶ 55, 91 N.E.3d at 842. And the state supreme court considered Wright's background and experience; it noted that "he was 37 years old, had attended two years of college, and had previously represented himself on appeal in a felony case." *Id.* Further, the state supreme court found that the trial court addressed Wright's decision to proceed *pro se* at two formal hearings, and the supreme court pointed to the transcripts from those hearings as evidence that Wright understood the "the potential pitfalls of" representing himself. *Id.* In short, the court examined the record as a whole and considered the general circumstances under which Wright was waiving his right to counsel. Therefore, the supreme court's decision that Wright adequately waived his right to counsel was neither contrary to nor an unreasonable application of federal law.

Citing *Von Moltke v. Gillies*, 332 U.S. 708 (1948), Wright contends that a judge must inform a defendant of the precise maximum sentence that he faces in order for a waiver of counsel to be valid. In *Von Moltke*, the Supreme Court stated that a waiver of counsel "must be made with an apprehension of the nature of the charges [and] the range of allowable punishment thereunder." *Id.* at 724. But the language on which Wright relies is not "clearly established law," so it cannot be the basis for federal habeas corpus relief. *See* U.S.C. §§ 2254(d)(1). This is because *Von Moltke* is a plurality opinion, so its precedential value is limited. *U.S. ex rel. Walker v. Yurkovich*, No. 10 C 1959, 2010 WL 3937484, at *3 (N.D. Ill. Oct. 5, 2010); *U.S. ex rel. Lamb v. Knop*, No. 99

C 4873, 2000 WL 1780345, at *5 (N.D. Ill. Nov. 2, 2000). Perhaps more to the point, the Seventh Circuit has expressly rejected the notion that *Von Moltke* established a *per se* requirement that a court must inform a criminal defendant of specific information, including the maximum sentence he faces, before the defendant can waive his right to counsel. *See Spanbauer v. Burke*, 374 F.2d 67, 72–74 (7th Cir. 1966); *Cox v. Burke*, 361 F.2d 183, 186 (7th Cir. 1966) (citing *Von Moltke* and concluding that "the failure of the trial court to indicate a maximum sentence did not render [defendant's] waiver of counsel incompetent or unintelligent"); *see also Walker*, 2010 WL 3937484, at *3 (collecting cases and concluding that petitioner was not entitled to a writ of habeas corpus where the state trial court failed to inform him of his maximum potential sentence); *Lamb*, 2000 WL 1780345, at *5 (same, where the trial court did not inform petitioner of the minimum and maximum possible sentences and the possibility of consecutive sentences). Rather, as indicated, a criminal defendant need only know how his waiver of the right to counsel "would likely apply *in general* in the circumstances." *Tovar*, 541 U.S. at 92.

 For these reasons, the Illinois Supreme Court's decision regarding the validity of Wright's waiver of counsel was neither contrary to nor an unreasonable application of federal law. Therefore, Wright is not entitled to a writ of habeas corpus relief on his claim concerning his waiver of counsel.

**B.   Exclusion of co-defendant's post-arrest statement**

In his second claim, Wright alleges that the trial court improperly excluded the statement by his codefendant, Morgan—in which Morgan told Detective Lee that he had committed the robbery with a BB gun—in violation of his Sixth and Fourteenth

Amendment rights. The Court turns first to the parties' dispute about when Wright amended his habeas petition to include this claim. Then, the Court discusses the proper standard of review and, finally, the merits of the claim.

### 1. Amendment

As indicated, respondent did not address Wright's second claim—concerning the exclusion of Morgan's statement—at all in her response brief. After Wright pointed that out in his reply brief, respondent sought leave to file a surreply on the ground that Wright's reply brief included a new claim not in his original petition. The Court gave respondent leave to do so to the extent that was the case, but the Court did not decide at the time whether or not Wright had included a new claim in his reply brief.

In his surreply, Wright contends—correctly—that he asserted the new claim in operative version of the petition, which he filed before respondent filed her response brief. And he contends—also correctly—that he had a right to amend his petition without leave at that time because it was "before a responsive pleading [had been] served." *See* Fed. R. Civ. P. 15(a)(1)(B). Indeed, in federal habeas cases because under Habeas Corpus Rule 4, a petition is not served on the respondent until the judge completes a preliminary inspection of it and directs the respondent to file an answer. *Mayle v. Felix*, 545 U.S. 644, 663 (2005). "In the interim, the petitioner may amend his pleading 'as a matter of course.'" *Id.* (quoting Fed. R. Civ. P. 15(a)). In short, Wright properly raised his new claim in his amended petition, not in his reply brief.

Rule 5(b) of the Rules Governing Section 2254 Cases requires a respondent to address the allegations in a state prisoner's habeas corpus petition. Because Respondent did not address Wright's second claim, she has failed to comply with that

rule. But that failure does not mean that Wright automatically prevails on the claim. *See Hashim v. Baenen*, No. 13-CV-65-BBC, 2014 WL 793338, at *6 (W.D. Wis. Feb. 26, 2014) (declining petitioner's request to consider a claim to be "unopposed" even though respondent did not address petitioner's allegations about the claim in its answer), *aff'd sub nom. Tiggs v. Foster*, No. 14-1506, 2014 WL 5066615 (7th Cir. Sept. 5, 2014). This is particularly true where, as here, it is clear from respondent's surreply that she opposes Wright's second claim. *See id.* Accordingly, the Court turns next to the proper standard for that claim and then to its merits.

### 2.    Standard of review

As with Wright's first claim, if he contends that section 2254(d)'s standard of review does not apply to this claim concerning Morgan's statement because the Illinois Supreme Court did not expressly say that it was adjudicating the federal aspects of that claim on the merits, the Court disagrees. Wright presented this claim to the Illinois Supreme Court, so this Court must presume that the state court adjudicated it. *See Sarfraz*, 885 F.3d at 1036. Though Wright can try to rebut this presumption and show that the state court's decision should be subject to *de novo* review, he has not attempted to do so. *See id.* Therefore, the Court applies the deferential standard from section 2254(d), which the Court discussed earlier in this opinion.

### 3.    Merits

As indicated, Wright asserts that the exclusion of Morgan's statement impeded his rights under the Fourteenth and Sixth Amendments. "The Due Process Clause of the Fourteenth Amendment and the Compulsory Process Clause of the Sixth Amendment guarantee a right to 'a meaningful opportunity to present a complete

18

defense.'" *Fieldman v. Brannon*, 969 F.3d 792, 800 (7th Cir. 2020) (quoting *Crane v. Kentucky*, 476 U.S. 683, 690 (1986)). This includes a defendant's right to present his version of the facts so the jury "may decide where truth lies." *Id.* at 801 (quoting *Washington v. Texas*, 388 U.S. 14, 19 (1967)). This right is clearly established under federal law. *See id.*

Though this right to present a complete defense is clearly established, it is not absolute. *See id.* It may "run headlong into state evidentiary rules 'designed to ensure' the admission of reliable evidence." *Id.* (quoting *Rock v. Arkansas*, 483 U.S. 44, 53 (1987)). That said, if an evidentiary rule "'infringes upon a weighty interest of the accused' and is 'arbitrary or disproportionate to the purposes [it] is designed to serve,'" then the rule must yield to the defendant's due process right to present a defense. *Id.* (quoting *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006)) (alterations omitted).

There is a good argument that Wright had a "weighty interest" in presenting evidence that the weapon used in the robbery was a BB gun, but neither he nor respondent have fully addressed that issue in their briefs. *See id.* Whether or not the weapon was a BB gun is potentially of great significance. The basis on Wright was charged was "that [his] codefendant committed robbery and carried on or about his person, or was otherwise armed with, a firearm." *Wright*, 2015 IL App (1st) 123496, ¶ 74, 33 N.E.3d at 805 (citing 720 Ill. Comp. Stat. 5/18-2). A BB gun is not considered a firearm under the Illinois Criminal Code. *Id.* ¶ 30, 33 N.E.3d at 792 (citing 720 Ill. Comp. Stat. 5/2-7.5 (defining "firearm" according the meaning in Section 1.1 of the Firearm Owners Identification Card Act); 430 Ill. Comp. Stat. 65/1.1 (Firearm Owners Identification Card Act; excluding from the definition of "firearm" any "B-B gun which

19

expels a single globular projectile not exceeding .18 inch in diameter or which has a maximum muzzle velocity of less than 700 feet per second " or "B-B gun which expels breakable paint balls containing washable marking colors").  Though an armed robbery can also be committed with a "dangerous weapon other than a firearm," 720 Ill. Comp. Stat. 5/18-2, and at least in some situations a BB gun can be considered such a weapon, as indicated, that was not the basis on which Wright was charged.  *See id.*; *see also People v. Hernandez*, 2016 IL 118672, ¶ 20, 51 N.E.3d 794, 801 (whether an object can be used as a "dangerous weapon" to establish armed robbery under section 18-2 is a question for the trier of fact); *cf. People v. Ligon*, 2016 IL 118023, ¶ 24, 48 N.E.3d 654, 664 (BB gun can qualify as a dangerous weapon other than a firearm under the definition applicable to armed robbery where the BB gun was used, for example, to strike or intimidate a victim).  In short, a determination by the jury that the prosecution had not proven that the weapon was a real firearm as opposed to a BB gun could have led to a conviction on the lesser offense of robbery, which carries a significantly shorter sentence.

In sum, evidence that the weapon used in the robbery may have been a BB gun may have been critical to Wright's defense in that it creates "a reasonable likelihood that [it] could have affected the judgment of the trier of fact," *Caffey v. Butler*, 802 F.3d 884, 896 (7th Cir. 2015) (quoting *United States v. Valenzuela–Bernal*, 458 U.S. 858, 872–74 (1982)).  To put it another way, because the prosecution had presented testimony that the weapon used in the robbery was an actual firearm, Morgan's statements that the weapon was a BB gun statements arguably "went straight to the heart of" a key issue in Wright's defense:  that the weapon was not a firearm and therefore he could not be

convicted of armed robbery. *Fieldman*, 969 F.3d at 805 (explaining why certain excluded evidence infringed upon a weighty interest of the accused). The exclusion of those statements could have impeded Wright's ability to prevent a full defense.[3] Without more briefing, however, the Court cannot determine whether that was the case.

In addition, if Wright did have a weighty interest in presenting evidence that the weapon was not a firearm, the Court is unable to conclude at this time whether the state court's exclusion of Morgan's statement inappropriately infringed upon that weighty interest. This is in part because the Illinois Supreme Court appears to have assumed, without much discussion, that Morgan was actually available to testify at the point in time during the trial when Wright attempted to cross-examine Lee about Morgan's statement. Thus the state supreme court found that Morgan's statement was properly excluded as hearsay because a state-law hearsay exception for declarations against interest—Illinois Rule of Evidence 804(b)(3), which applies only when a declarant is unavailable—did not apply to the statement at that time. *Wright*, 2017 IL 119561, ¶ 80, 91 N.E.3d at 847.

The Court has questions regarding whether the supreme court's determination regarding Morgan's unavailability at the moment when Wright attempted to elicit his statements to law enforcement. As indicated, Morgan's attorney, at a hearing held one day before trial, made representations to the trial court to the effect that Morgan would not testify. Despite this, neither the state supreme court nor the state appellate court appear to have expressly addressed whether the finding regarding Morgan's availability

---

[3] For these reasons, the Court also doubts respondent's contention that the exclusion of the evidence had no substantial or injurious effect on the verdict.

at the relevant point during the trial impeded Wright's weighty interest in presenting evidence that the weapon was not a firearm, to the extent that he had such an interest. That might support a finding that the exclusion of his statement was an "unreasonable" application of federal law. *Johnson v. Jaimet*, 852 F.3d 700, 706–07 (7th Cir. 2017) (considering whether a state court's exclusion of hearsay was an unreasonable application of federal law given the "reasons offered by the state court in support of its finding" that the evidence was unreliable). But neither Wright (who is *pro se*) nor respondent (who is not) have fully addressed this point in their briefs.

Whether the exclusion of Morgan's statement was an unreasonable application of federal law turns at least in part on whether the statement bears "'considerable assurance[s] of [its] reliability,' sufficient to compensate for not being subject to cross-examination or given under oath; and (2) [is] 'critical' to the defense." *Caffey*, 802 F.3d at 896 (quoting *Chambers v. Mississippi*, 410 U.S. 284, 299–300 (1973)). That determination entails "a fact-intensive inquiry" that "requires balancing the state's legitimate interests against the hearsay statement's trustworthiness and importance to the defendant." *Id.* at 896. As respondent points out, a declarant's availability for cross-examination is a "powerful assurance of reliability"—but it is not the only such assurance. *See id.* at 898.

The Illinois Supreme Court did not expressly address this issue, so the Court can look to the relevant analysis in the state appellate court's decision and presume that the Illinois Supreme Court "adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). But the state appellate court did not discuss the facts case in detail when it found that Wright's claim did "not rise to the level of a constitutional due process

22

violation as in *Chambers*." *See Wright*, 2015 IL App (1st) 123496, ¶ 65, 33 N.E.3d at 802. Accordingly, the Court could also benefit from further briefing on whether the state courts determined that the evidence was unreliable and, if so, whether that determination was contrary to or an unreasonable application of federal law.

To be sure, respondent contends that the state courts have leeway in applying *Chambers* because it is a general rule. But, as indicated, *Chambers* involves "a fact-intensive inquiry." *Caffey*, 802 F.3d at 896. As just explained, there is reason to question whether the state courts properly engaged in that inquiry and whether their decisions were contrary to or involved an unreasonable application of federal law.

For these reasons, the Court has determined that it will appoint counsel under 28 U.S.C. § 2254(h) to explore the viability of the claim and provide further briefing. *See* 28 U.S.C. § 2254(e)(2), (h); *Lee v. Kink*, 922 F.3d 772, 773-75 (7th Cir. 2019).

### Conclusion

For the foregoing reasons, the Court denies Wright's motion for a writ of habeas corpus, with the exception of his evidentiary claim based on the exclusion of his co-defendant's statement [dkt. no. 13]. By separate order, the Court will appoint counsel to pursue that claim.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: September 29, 2020

23