IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EUGENE WRIGHT, | ) |
| Petitioner, | ) ) ) |
| vs. | ) Case No. 19 C 826 |
| DEANNA BROOKHART, Warden, Lawrence Correctional Center, | ) ) ) ) |
| Respondent. | ) ) |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

In 2012, Eugene Wright was convicted of armed robbery with a firearm after a jury trial in the Circuit Court of Cook County. He was sentenced to 50 years in prison. In 2019, after exhausting the state court appellate process, Wright filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. He asserted two claims—one regarding his waiver of his right to counsel and another concerning the exclusion of his codefendant's statement at trial. In an order dated September 29, 2020, this Court denied the right to counsel claim but deferred ruling on the second claim. *See* Dkt. no. 56. The Court appointed Wright an attorney and ordered supplemental briefing on that claim. For the reasons stated below, the Court grants Wright's petition for habeas corpus.

## Background

Wright and his codefendant, Michael Morgan, were charged with armed robbery with a firearm in connection with a December 26, 2010 robbery of a Bakers Square

restaurant at 7131 North Western Avenue in Chicago. The two defendants were tried separately. Morgan was represented by counsel; Wright proceeded *pro se*.

On the day before Wright's trial, the state trial court reviewed Wright's witness list, which included co-defendant Morgan as a potential witness. At that point, Morgan was still awaiting trial on the armed robbery charge. *See* State Court Record, Ex. O at HH-4 (dkt. no. 27-15 at ECF p. 75 of 253) (discussion later during Wright's trial). The court asked whether Morgan was aware that he might be called as a witness, and the prosecutor responded affirmatively. The court then said, "I assume that Mr. Morgan has nothing to say." State Court Record, Ex. M at EE-31 (dkt. no. 27-13 at ECF p. 95 of 252). A person in the courtroom who the parties agree was Morgan's attorney responded, "I believe so, Judge. That's [sic] he has nothing to say." *Id.*

The next day, the prosecution called the manager of the restaurant, Martin Perez, as its first witness. Perez testified that Morgan entered the restaurant around closing time, wearing a grey hoodie and a white hat. When Perez asked if he could help him, Morgan showed what "looked like a black automatic, black gun" tucked into his waistband and demanded to be taken to the restaurant's office. *People v. Wright*, 2017 IL 119561, ¶ 9, 91 N.E.3d 826, 931. Perez stated that he was sure that Morgan's gun was an actual firearm because he had seen guns like that before. He also testified that he thought he felt the barrel of the gun against his back as he walked with Morgan to the office.

A waitress who was working at the restaurant at the time of the robbery also testified that she saw the handle of a gun tucked into Morgan's waistband. So did another waiter. He had experience with guns and testified that he believed the gun in

2

Morgan's waistband to be a "9 millimeter pistol." *Id.* ¶ 12, 91 N.E.3d at 832.

The prosecution also called Chicago police officer Paul Cirrincione to testify. On the night of the robbery, Cirrincione and another officer were conducting surveillance of the Western Avenue Bakers Square restaurant because a nearby Bakers Square had recently been robbed just before closing time. He testified that, shortly before 11 p.m., he saw two men matching the description of the suspects in the prior robbery leave the restaurant. When Cirrincione asked them to approach the car, they fled on foot in different directions. With the help of other officers, Cirrincione apprehended both Wright and Morgan.

Detective Allen Lee was called to testify at trial as well. Lee had interviewed Morgan less than three hours after the robbery occurred. According to Lee's police report, Morgan stated that Wright had picked him up in Wright's car, told him they were going to rob a restaurant, and handed him a black BB gun to use in the robbery. The report also stated that Morgan told two other people that the robbery was Wright's idea and that Wright gave him a metal BB gun. On cross-examination, Wright asked Lee whether a weapon was recovered on the date of the robbery. Lee testified that no weapon had been recovered on that day but that a black Crossman BB gun was subsequently recovered in the vicinity of where one of the defendants was running.

Wright attempted to enter into evidence photographs of the BB gun that had been recovered, but the court ruled that he could not ask Lee about the photos after Wright admitted that he did not know who took the photos or when they were taken. Wright then moved to dismiss the case, contending that the prosecution violated its obligations under *Brady* by not submitting the photographs to him.

3

The court held a sidebar conference to discuss Wright's motion. The prosecution told the court that there were no fingerprints on the gun suitable for comparison and that there was no evidence that a BB gun was used in the commission of the offense. In response, Wright made an offer of proof that Lee would testify that Morgan stated that he committed the crime with a black BB gun. Wright acknowledged that the statement was hearsay and that he would need to get Morgan to testify about the issue directly. The court told Wright that he needed to get that testimony from Morgan, not Lee. It then denied Wright's motion to dismiss the indictment based on the purported *Brady* violation.

When Wright resumed his cross-examination of Lee, Lee testified that he interviewed Morgan about the crime. Wright asked Lee about the conversation, but the prosecutor objected to this line of questioning. The court sustained the objection, stating, "We are not going to go into the statement, the nature of the conversation with Morgan." State Court Record, Ex. N at GG-98-99 (dkt. no. 27-14 at ECF pp. 248-49 of 253).

After the prosecution had called all of its witnesses, the court held a hearing on the record outside the presence of the jury. The court placed Morgan under oath, and he invoked his Fifth Amendment right not to testify. Wright then proceeded with his case-in-chief, in which he testified on his own behalf. The prosecution called Lee as a rebuttal witness. Wright did not make a second attempt to admit Morgan's statements.

Following closing arguments, the court gave the jury instructions and verdict forms on both armed robbery and robbery. The jury found Wright guilty of armed robbery, and the court sentenced him to 50 years in prison.

4

Wright's sentence depended, in large part, on the jury's finding that Morgan used a firearm in connection with the robbery. A conviction of armed robbery adds an extra 15 years to a defendant's sentence as compared to a conviction of the lesser included offense of robbery. See 720 Ill. Comp. Stat. 5/18-2. Under state law, firearm is defined as excluding BB guns, among other things. See 720 Ill. Comp. Stat. 5/2-7.5; 430 Ill. Comp. Stat. 65/1.1. Thus, if the jury had determined that the prosecution had not proven that when committing the robbery Morgan used an actual firearm as opposed to a BB gun—Wright likely would have faced a significantly lower sentence than the 50-year prison term that the judge imposed.

Wright appealed his case to the Illinois Appellate Court, arguing, among other things, that (1) his waiver of counsel was not knowing and voluntary because the trial court did not properly admonish him of his potential maximum sentence length and (2) the trial court violated his constitutional rights by excluding Morgan's statement about the BB gun. The court agreed with Wright on the first issue and found that the trial court did not substantially comply with Illinois Supreme Court Rule 401(a) when it mistakenly told him that his maximum possible sentence was 60 years when in fact it was 75 years. For this reason, the appellate court reversed Wright's conviction and remanded the case to the trial court for a new trial.

On the second issue, however, the appellate court concluded that the trial court's exclusion of Morgan's statement did not "rise to the level of a constitutional due process violation." *People v. Wright*, 2015 IL App (1st) 123496, ¶ 65, 33 N.E.3d 781, 802. This was the court's sole analysis of Wright's constitutional claim. Instead, the court found that Wright's claim was "more appropriately reviewed for admissibility as a statement

5

against penal interest under Illinois Rule of Evidence 804(b)(3)." *Id.*

To admit a statement under Rule 804(b)(3), a party must show that (1) the declarant was unavailable; (2) the declarant's statement was against his penal interest; and (3) corroborating circumstances support the trustworthiness of the statement. *Id.* ¶ 66, 33 N.E.3d at 802. The appellate court found that the first element was met because Wright "was not able to call [Morgan] as a witness to testify regarding his statement to Detective Lee." *Id.* ¶ 67, 33 N.E.3d at 803. It also found that Morgan's statement was against his penal interest. *Id.* ¶¶ 68–69, 33 N.E.3d at 803–04. Despite these findings, however, the appellate court concluded that the trial court did not abuse its discretion. It reasoned that, because Wright did not attempt to elicit Morgan's statement following Morgan's invocation of his right not to testify, Wright "effectively abandoned the issue." *Id.* ¶ 70, 33 N.E.3d at 804.

Both parties appealed to the Illinois Supreme Court. The prosecution argued that the appellate court erred when it held that Wright's waiver of counsel was invalid; Wright argued that the appellate court erred in finding that the exclusion of Morgan's statement did not violate Wright's constitutional rights. The Illinois Supreme Court reversed the appellate court's decision regarding the waiver of counsel issue and affirmed the decision regarding the exclusion of Morgan's statement. In determining that the trial court did not err in excluding the statement, the Illinois Supreme Court assumed that the state's hearsay exception for declarations against penal interest did not apply to Morgan's statement until after Morgan personally invoked his Fifth Amendment right against self-incrimination at the formal, in-court hearing. For this reason, the court concluded that Morgan was available when Wright first cross-examined Lee, and thus

6

his statement was properly excluded as hearsay not falling into any exception. Although Morgan became unavailable after he pleaded the Fifth Amendment, the court said, Wright did not attempt to introduce the statement afterwards, so "[t]he trial court was simply not asked to make any further rulings on its admissibility." *Wright*, 2017 IL 119561, ¶ 84, 91 N.E.3d at 847. The state Supreme Court addressed only the state-law evidentiary admissibility issue; it did not consider Wright's claim that his constitutional rights were violated by the exclusion of Morgan's statement.

In February 2019, Wright filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254. As discussed earlier, in September 2020, the Court denied his petition in part, deferred its decision in part, and appointed Wright an attorney to represent him on the remainder of his case. The parties filed supplemental briefs on the issue of whether the state trial court's exclusion of Morgan's statement violated Wright's constitutional rights. The Court addresses this question now.

## Discussion

A federal court may issue a writ of habeas corpus only if (1) the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) the state court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). A state court decision that is "contrary to" Supreme Court precedent is one that "applies a legal standard inconsistent with governing Supreme Court precedent or contradicts the Supreme Court's treatment of a materially identical set of facts." *Rodriguez v. Gossett*, 842 F.3d 531, 537 (7th Cir. 2016) (citing *Bell v. Cone*, 535 U.S.

7

685, 694 (2002)). An "unreasonable application" of clearly established federal law occurs when the state court "identifies the correct legal rule but applies it in a way that is objectively unreasonable." *Id.* (citing *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003)). This is a high standard. To meet it, "the state court's ruling must be 'so lacking in justification that there was an error . . . beyond any possibility of fairminded disagreement." *Winfield v. Dorethy*, 956 F.3d 442, 451 (7th Cir. 2020).

The focus of the "unreasonable application" analysis is "on the work of the last state court to consider the merits of the federal claim." *Lee v. Avila*, 871 F.3d 565, 570 (7th Cir. 2017). In this case, the state court that last ruled on Wright's case was the Illinois Supreme Court. That court, however, did not address Wright's federal constitutional claim regarding the exclusion of Morgan's statement. Instead, the state supreme court addressed only the admissibility of the statement under Illinois law. For this reason, the Court looks to the reasoning of the Illinois Appellate Court as the last court to have considered Wright's constitutional claim on its merits. As indicated earlier, on Wright's constitutional claim, the court stated only that it "find[s] that the facts of this case do not rise to the level of a constitutional due process violation as in *Chambers*." *Wright*, 2015 IL App (1st) 123496, ¶ 65, 33 N.E.3d at 802.

Wright contends that the state court's exclusion of Morgan's statement was "contrary to, or involved an unreasonable application of" Supreme Court precedent regarding the right to present a defense. Under the Sixth and Fourteenth Amendments, a criminal defendant has the right to "a meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986). This right includes the right to present relevant evidence. *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973). In

8

some cases, state evidentiary rules excluding evidence from criminal trials will interfere with this right. *United States v. Scheffer*, 523 U.S. 303, 308 (1998). When this happens, the state evidentiary rules will typically win. *Id.* In some situations, however, "strict application of a state evidentiary rule must yield to the defendant's constitutional rights." *Caffey v. Butler*, 802 F.3d 884, 895 (7th Cir. 2015).

The sole justification for the state appellate court's conclusion that the trial court did not violate Wright's constitutional rights was that "the facts of this case do not rise to the level of a constitutional due process violation as in *Chambers*." *Wright*, 2015 IL App (1st) 123496, ¶ 65, 33 N.E.3d at 802. The court offered no reasoning or justification—none—to support this. It simply stated a conclusion and ended its discussion of the constitutional issue right there. *Id.*[1] If the state appellate court was suggesting that Wright's argument lacked merit because his case was not on all fours with *Chambers*, that plainly would have been an unreasonable application of Supreme Court authority. "*Chambers* was not a one-and-done opinion from the Supreme Court." *Kubsch v. Neal*, 838 F.3d 845, 855 (7th Cir. 2016). As the Court will discuss in more detail below, the Supreme Court's later decisions demonstrate that *Chambers* does not describe the entire universe of situations in which a defendant may sustain a claim that an exclusion of evidence violates his federal constitutional right to present a defense. *See, e.g.*, *Green v. Georgia*, 442 U.S. 95, 97 (1979).

The state appellate court gave no explanation for its conclusory ruling on the

---

[1] There is no question that Wright raised the point as a federal constitutional issue on direct appeal; the state appellate court acknowledged as much. *See Wright*, 2015 IL App (1st) 123496, ¶ 64, 33 N.E.3d at 802 ("We note that defendant frames this contention as a constitutional issue . . . .").

constitutional issue; specifically, it did not assess or even mention the factors set out in *Chambers* and its progeny (discussed below). But "[t]he state court need not explain its reasoning in rejecting the petitioner's federal claim." *Harris v. Thompson*, 698 F.3d 609, 623 (7th Cir. 2012). "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was *no reasonable basis for the state court to deny relief*." *Harrington v. Richter*, 562 U.S. 86, 98 (2011) (emphasis added). Specifically, the federal court "must determine what arguments or theories . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Id.* at 102. The Court therefore assesses whether there is any "reasonable basis for" the state court's ruling, namely "whether it is possible fairminded jurists could disagree" that the state court's decision was inconsistent with the *Chambers* line of cases.

Excluding evidence favorable to a defendant violates the defendant's constitutional rights when that evidence "implicate[s] a sufficiently weighty interest of the accused" and the restriction is "arbitrary or disproportionate to the purposes [it is] designed to serve." *Scheffer*, 523 U.S. at 308–09. The exclusion of hearsay violates this standard when the excluded evidence (1) bears "considerable assurance of [its] reliability" and (2) is "critical" to the defense. *Chambers*, 410 U.S. at 299–300.

With respect to the first requirement, the Supreme Court in *Chambers* listed several factors that it considered when determining whether the excluded evidence was sufficiently reliable. First, the Court noted that the excluded statements had been made spontaneously to close acquaintances shortly after the crime was committed. *Id.* at

300. Second, the Court found that the statements were corroborated at trial by independent evidence. *Id.* Third, the Court found that the statements were self-incriminating and against the declarant's penal interest. *Id.* at 301. And lastly, the Court found that the declarant was available for cross-examination at trial. *Id.* These factors are not exhaustive, and they do not all have to be present for a defendant's rights to be violated. *Sharlow v. Israel*, 767 F.2d 373, 377 (7th Cir. 1985).

The Court finds that there is no doubt, and no "possibility of fairminded disagreement," that Morgan's statement was sufficiently reliable to satisfy the first requirement of the *Chambers* test. Wright presented copious evidence establishing that Morgan's statement about the BB gun bears "considerable assurance of its reliability." Specifically, the record reflects that: (1) Morgan confessed to committing the robbery with a BB gun shortly after the robbery took place, while the matter was still fresh in his mind and likely before anyone had the opportunity to coerce or encourage him to make a false statement; (2) Morgan himself had little incentive to lie, because falsely admitting to robbing a restaurant with a BB gun would likely subject him to criminal liability, especially considering that the statement was made to a law enforcement official; and (3) Morgan's statement was corroborated by a BB gun that was found near where the robbers had run, a week after the incident and that matched eyewitness descriptions of the weapon used in the robbery. Considering the evidence as a whole, it would be unreasonable to conclude that the statement was not sufficiently reliable—and, the Court hastens to add, the state appellate court did not so much as hint that the statement was unreliable. For completeness, however, the Court addresses each *Chambers* factor separately.

11

The first factor, whether the excluded statements had been made spontaneously to close acquaintances shortly after the crime was committed, weighs in favor of Wright's contention that Morgan's statement was wrongfully excluded and that the state court unreasonably concluded otherwise. Like the confessions excluded in *Chambers*, Morgan's statement was made on the night of the crime—less than three hours after the robbery, while the matter was still fresh in Morgan's mind. Although Morgan did not make his statement to close acquaintances like the declarant in *Chambers*, he made the statement to the detective in charge of investigating the case. The Seventh Circuit has held that statements made to police investigators have significant indicia of reliability because, in such cases, "the specter of prosecution would have been obvious." *Cunningham v. Peters*, 941 F.2d 535, 540 (7th Cir. 1991); *see also Rivera v. Director, Dep't of Corrections*, 915 F.2d 280, 282 (7th Cir. 1990).

The second *Chambers* factor, corroboration by independent evidence, also supports Wright's argument. As Wright points out, Morgan's statement was corroborated in a significant way by the found BB gun. The BB gun was recovered only a week after the robbery and was found in the vicinity of where Wright and Morgan were running from the police. The BB gun also matched the description of the gun given by the eyewitnesses. In fact, Wright showed Perez photographs of the found BB gun at trial. Perez stated that the BB gun looked like the same kind of gun Morgan had used, but he wasn't sure because the picture was too blurry.

Respondent contends that the BB gun constitutes "weak" corroborating evidence with respect to Morgan's statement. Resp. at 20. It points to the fact that the BB gun was found a week after the robbery and that, on the night of the robbery, the police

12

officers were unable to find a gun. Respondent also emphasizes the fact that there is no forensic evidence tying the BB gun to the robbery and that the employees of the restaurant testified that Morgan had a real gun. Although these facts arguably affect the weight to be given to Morgan's statement, they are not as persuasive as respondent contends. The fact that the BB gun was found a week after the robbery is easily explained by the fact that there was a significant amount of snow on the ground and that it was past 11 p.m. when the defendants were arrested. Additionally, the lack of forensic evidence regarding the gun does not foreclose the possibility that it was the gun that Morgan used, especially considering the similarities between the BB gun and the eyewitness descriptions of the gun used in the robbery. In addition, as any experienced criminal practitioner or judge is aware, it is quite rare to recover forensic evidence from a gun that, like this one, has not been fired—specifically, fingerprints suitable for comparison almost never appear on a gun, and recovery of DNA is equally rare, particularly from an object like this one that likely was sitting in snow for a period. Thus the absence of forensic evidence is not a factor of significance. Lastly, although the employees of the restaurant testified that Morgan used a real gun, they only saw the handle of the gun for brief periods of time, which would have made the task of identifying the type of gun significantly more difficult.

  The third *Chambers* factor asks whether the excluded statement was against the declarant's penal interest. Although the parties agree that Morgan's statement, considered in its entirety, was against his penal interest, respondent argues that the portion of the statement that Wright wanted to admit—namely, the portion about his using a BB gun in the commission of the crime—was exculpatory rather than

inculpatory. Resp. at 19 (citing *Williamson v. United States*, 512 U.S. 594, 599–600 (1994)). This is so, respondent contends, because a BB gun does not constitute a firearm under Illinois law, so Morgan's admitting to using a BB gun could be construed as a strategic confession to get charged with a less serious offense.

The Court disagrees. Although Morgan's statement could be construed as mitigating his ultimate culpability, it still was an admission of the crime of robbery and thus was against his penal interest. A statement is against penal interest if it "subjects the declarant to criminal liability." *United States v. Bonty*, 383 F.3d 575, 579 (7th Cir. 2004). Morgan's statement about using a BB gun to rob the restaurant did exactly that. He may have been admitting to an offense less serious than armed robbery as defined under Illinois law, but his statement admitting to the robbery and the use of the BB pistol unquestionably subjected him to criminal liability. In addition, Morgan's admission that he used a black BB gun corroborated the eyewitness testimony of the victims, providing strong evidence that he was one of the individuals who perpetrated the crime. For this reason, the third *Chambers* factor strongly suggests that Morgan's statement is reliable.

That leaves the last factor: availability for cross-examination. Morgan was not available to testify: his lawyer made it clear that he would not testify, and Morgan himself later invoked his Fifth Amendment privilege at Wright's trial. But the fact that Morgan's statement does not meet one of the four *Chambers* factors—this one in particular—is of minor significance in light of the other factors. The law on this is clear. *See Green v. Georgia*, 442 U.S. 95, 97 (1979) (holding that the excluded statement was reliable even though the declarant was unavailable because he had invoked his right not to testify); *Rivera*, 915 F.2d at 280 (same). Considering these four factors, the Court

14

concludes that it is beyond "fairminded disagreement" that Morgan's statement is sufficiently reliable to trigger a *Chambers* violation. It is hard to imagine a reasonable appellate court that actually conducted the analysis called for by *Chambers* coming out the other way.

This, however, does not end the analysis: the excluded statement must also be critical to the defense. To qualify, evidence must be both favorable and material, which requires a "reasonable likelihood that the statement could have affected the judgment of the trier of fact." *Caffey*, 802 F.3d at 896 (citation omitted). Wright argues that Morgan's statement is critical because it provides strong evidence that Morgan used a BB gun, rather than an actual gun, during the robbery and therefore that Wright was guilty only of robbery, not armed robbery. Respondent contends that Morgan's statement is unlikely to have affected the jury's judgment given the other evidence in the case.

The Court concludes that there is no basis for "fairminded disagreement" that Morgan's statement was critical to Wright's defense. The only evidence at trial supporting the prosecution's contention that Morgan used a firearm was eyewitness testimony from individuals who were only able to observe the handle of the gun. A statement from the person who actually used the gun—particularly one corroborated by the finding of a BB pistol similar in appearance to what the eyewitnesses described— would significantly undermine those witnesses' testimony, especially because that testimony was based on brief observations of only part of the gun. Additionally, Morgan's statement that he used a BB gun is corroborated by the fact that a BB gun matching the description given by the eyewitnesses was later found in the area where

15

Morgan and Wright ran following the robbery. Although the police did not find a BB gun on the night of the robbery, this is easily explained by the fact that the crime occurred at night and there was a significant amount of snow on the ground. Lastly, the fact that there were no fingerprints on the BB gun suitable for comparison does not negate the fact that the BB gun was found only a week after the crime, in the same area where Morgan ran, and matched the descriptions given by the eyewitnesses. For these reasons, there was a "reasonable likelihood that the statement could have affected the judgment" of the jury; there can be no fairminded disagreement on this point.

If the jury had found that Morgan used a BB gun, Wright would have faced a significantly shorter sentence, as he would not have been subject to the 15-year add-on for armed robbery. Thus Morgan's statement "implicated a sufficiently weighty interest of the accused," meeting the "critical" element of the *Chambers* test. *Scheffer*, 523 U.S. at 308–09. Any conclusion to the contrary would be unreasonable.

Respondent makes two final arguments in opposition to Wright's petition for a writ of habeas corpus. First, it argues that this case does "not implicate *Chambers*" because the state court did not "completely frustrate[]" Wright's ability to present reliable evidence. Resp. at 11. Instead, respondent contends, the trial judge gave Wright the opportunity to show that Morgan was unavailable, but Wright failed to do so. First of all, this does not represent a significant distinction between this case and *Chambers* or suggest that the appellate court's application of *Chambers* and its Supreme Court progeny was reasonable. In *Chambers*, the statements were excluded as hearsay not falling into any exception. In this case, the statements were also excluded as hearsay not falling into any exception. The fact that Morgan's statement *almost* fell into the

16

exception for statements against penal interest is immaterial, and it certainly does not cut in favor of respondent's position here. For the purposes of this analysis, the question is whether the exclusion (whether as hearsay or as hearsay not quite falling into a hearsay exception—which amounts to the same thing) prevented Wright from presenting reliable and critical evidence at trial.

Respondent's second argument is that the state court properly excluded Morgan's statement because Wright did not attempt to introduce the statement after the moment that respondent contends Morgan became unavailable, i.e. when he personally appeared in court. This, as should be apparent at this point, is an entirely hypothetical rationale; it is not referenced as part of the state appellate court's conclusion that Wright's constitutional rights were not violated. The other hypothetical possibilities for the state court's unexplained ruling include a potential belief that Morgan's statement did not bear "considerable assurance of [its] reliability" as required under *Chambers* or that the statement was not critical to Wright's defense.

The Court nonetheless addresses on its own terms respondent's hypothesized justification for the state court's ruling: specifically that Wright did not attempt to introduce Morgan's statement after he became unavailable. This doesn't pass the straight-face test. The fact is that Morgan was *never* available at any relevant time during Wright's trial. The record on this is as clear as it could possibly be. Before Wright attempted to introduce Morgan's statement through Detective Lee, Morgan's attorney had appeared in court and advised that Morgan would not testify—specifically, that "he had nothing to say." In context, to any reasonable criminal law practitioner— which in this case, includes the trial judge, the prosecutor, and defense counsel—that

17

could only mean one thing: Morgan was claiming his Fifth Amendment privilege. And just as importantly—indeed, more importantly—at the time of Wright's trial, *Morgan was still awaiting trial on the charges against him*! There was, and is, no plausible basis to believe that Morgan would have agreed to waive his privilege and testify at Wright's trial *at any time* so long as he himself was still awaiting trial. In short, Morgan, as an accused defendant awaiting trial for the same offense, was essentially *by definition* unavailable to testify at *any* point during Wright's trial.

In sum, no reasonable jurist looking at this record could conclude that Morgan was actually available to testify when Wright attempted to introduce his statement during his examination of Detective Lee. Indeed, the trial judge himself quite plainly understood this: he essentially pushed the point during the colloquy with Morgan's counsel, saying to him, in a leading fashion, "I assume that Mr. Morgan has nothing to say."

There is likewise no basis for a reasonable jurist to conclude that Wright somehow abandoned (or waived or forfeited) the point by not trying *again* to introduce Morgan's statement after Morgan came in and confirmed what his attorney had said just three days earlier: Morgan would not testify. Lawyers are commonly told—and *pro se* litigants are not treated differently—that they do not need to raise points over and over in order to preserve them. *See United States v. Boyd*, No. 01 C 2086, 2002 WL 1949724, at *7 (N.D. Ill. Aug. 22, 2002) ("Indeed, it is reasonable—and usually advisable, absent changed circumstances of law or fact—to decline to reraise an argument before a court that has already rejected that very same argument."). *After* Morgan's lawyer initially told the court that Morgan "ha[d] nothing to say," Wright

18

attempted to introduce Morgan's exculpatory statement through cross-examination of Detective Lee; the trial judge refused to allow this; and no principle of law (federal or Illinois) required Morgan to keep trying after that refusal. This is particularly so given the fact that—as just noted—the trial judge himself had essentially pushed the point that "Mr. Morgan has nothing to say" during the colloquy with Morgan's lawyer—which Wright quite obviously observed as he sat in the courtroom. (The Court also notes in this regard that respondent has never contended, and certainly does not support any contention, that Wright procedurally defaulted the point by his actions or inaction during the trial.)

The Court also notes that respondent's argument misunderstands the Supreme Court's decision in *Chambers*. *Chambers* stands for the proposition that the application of state evidentiary rules to exclude certain kinds of evidence violates the right of an accused to present a defense. This is so regardless of whether the court properly applied state evidentiary rules. *Green*, 442 U.S. at 97 (finding that the defendant's constitutional rights were violated "[r]egardless of whether the proffered testimony comes within Georgia's hearsay rule"). Thus, even if respondent were correct that, under Illinois law, Morgan could have been considered available at the time of the trial court's exclusion of his statement and thus his statement did not fall within a hearsay exception, exclusion of the statement nonetheless violated Wright's federal constitutional rights because it was reliable and critical to his defense.[2] The Court finds

---

[2] Because the Court finds that, on the basis of the state record, the only reasonable conclusion is that Morgan's statement was reliable and critical under *Chambers*, it need not address Wright's other arguments contending that the state court acted unreasonably.

19

that no reasonable jurist could conclude otherwise.

## Conclusion

For the foregoing reasons, the Court directs the Clerk to enter judgment as follows: petitioner Eugene Wright's petition for a writ of habeas corpus is granted, and respondent is directed to release petitioner unless the state retries him within ninety days after entry of the judgment.

```
                                    _____
                                            MATTHEW F. KENNELLY
                                            United States District Judge
```

Date: September 12, 2022